THE AGRICULTURAL BANK *versus* HENRY K. ROBINSON & al.

To enable a banking corporation to maintain an action on a note made to it by an individual, there must be a consideration at the time of making the contract; and no injurious consequences to the parties or to others, which may afterwards happen from its having been made, can constitute a legal consideration for it.

If a note be made to a bank, without consideration, for the purpose of enabling the corporation, by including it as a part of its funds, to make a colorable and false statement of its actual condition, although it might have been a just cause for a revocation of the charter, and perhaps of indictment of the persons concerned for a conspiracy to defraud, yet the bank cannot maintain an action on such note.

THIS action was against Henry K. Robinson and Putnam Wilson, and was, like the two preceding, submitted by the parties to the decision of the Court upon the facts stated in the deposition of Cornelius Bedlow, jr. formerly cashier of the Agricultural Bank.

. The facts in this case are stated in the opinion of the Court. Unlike the two preceding cases, no shares in the bank were conveyed to the defendants, nor to any other person or corporation at their request, or in trust for them.

*Hobbs*, for the defendants.

1. The note declared on is void, it having been made in

substitution for one given in violation of the statute regulating banks and banking.   c. 519, § 3.

The capital stock should have been paid in, in gold and silver.   Taking the notes of Emerson and others was a fraud on the statute.   The substitution of the note declared on is equally so.

2. If it is said, that the note was given in consideration of the transfer of stock, the answer is, that no stock was ever transferred to the defendants; but if it was, it was done in violation of the statute, because, until the whole capital stock had been paid in, there could be no transfer thereof, except by execution or distress, or by administrators or executors.   The case finds that no part of this stock was ever paid for, except by notes in fraud of the law.   Section 3.

3. The note is without consideration and void.   The notes of Emerson & al. were given up, on their transferring their stock, not to the defendants, but to the bank, by which it was ever afterwards held, and managed.

4. The bank has adopted and acted upon the arrangement of its directors with the defendants; and the whole transaction originating and ending in fraud on the part of the plaintiffs, they cannot recover.   January 21, 1845.

*Kent* and *S. W. Robinson*, for the plaintiffs, submitted this case on their part, upon their argument made in the case of the same plaintiffs against Burr & al. *ante*, p. 256.

The opinion of a majority of the Court, WHITMAN C. J. dissenting therefrom, for reasons given, *ante*, p. 271, in an opinion with reference to this and the two preceding cases, was drawn up by

SHEPLEY J. — This suit is upon a promissory note for the sum of ten thousand nine hundred and sixty-one dollars and twenty-five cents, made by the defendants on April 1, 1838, payable to the bank, or order, in six months after date.   The case is submitted, as an agreed statement, upon the deposition of the former cashier of the bank.   He states, in substance, that five persons named, and one firm composed of two other

persons named, owned stock in the bank to the amount of two thousand dollars each; that their several notes for two thousand dollars each, given for that stock, remained in the bank from the commencement of its operations until their stock was transferred, when they were delivered up to them respectively, by order of the directors; that they transferred this stock, to the amount of two thousand dollars, to Stillman Wilson, and the remainder, amounting to ten thousand dollars, to the bank; that this note was made to the bank on the occasion of such transfer of stock to the bank; and that the only consideration for it was such transfer of stock to the bank.

There was no agreement, that the bank should hold it in trust or for the benefit of the defendants. On the contrary there was, as the witness states, a verbal agreement made at the time, that they should not be called upon to pay the note. By such a transfer and arrangement, the defendants neither obtained, nor could obtain, any legal or beneficial interest in that stock. The stock was not transferred to the bank at their solicitation. That arrangement, according to the testimony, was wholly made between the former owners of the stock and the bank. The corporation parted with nothing to obtain the note; nor did it incur any liability or suffer any injury on account of receiving it. The only purpose disclosed for making the note, appears to have been to enable the corporation, by including it as a part of its funds, to make a colorable and false statement of its actual condition. This might have been a just cause for a revocation of its charter; and the persons concerned in such an arrangement to deceive, might perhaps have been indicted and punished for a conspiracy, with intent to deceive and defraud the creditors or stockholders of the bank. But such illegal proceedings and liabilities could not change the fact, that there was neither benefit to the one party nor loss to the other, to form a consideration for the promise. If a man of property were to make a note without any consideration therefor, to a person of doubtful credit, to enable him to use it by an exhibition of it to obtain credit, and he should thus use it, and obtain the desired credit; is the law such, that

the promisee, upon such proof, could recover the note of the promisor? When the law shall conclude, that an agreement between two persons to deceive and defraud a third constitutes a valuable consideration for the contract between themselves, he may; but not till then. The bank in this case does not appear to be able to place itself in a more favorable condition for a recovery. Nor can any injury, which a creditor or stockholder of the bank may be supposed to have suffered by it, constitute a consideration for the note. There is, in the first place, no proof, that any particular creditor or stockholder has in fact suffered by the making of the note. And the Court cannot properly enter upon a wide range of conjecture, and infer, that some one must have suffered by it, because the assets of the bank, as an insolvent corporation, were nearly four years afterward, placed in the hands of receivers.

Moreover, if the doctrine were admitted, that the probability of loss or injury, which the creditors or stockholders of a corporation might sustain by its taking a note and making a false exhibit of its funds, constituted a sufficient consideration for it, it would be difficult for any one to avoid his contract with a corporation by proof of a want, or a failure of consideration. It would not be difficult, in many cases, for the corporation to prove, that such contract had been exhibited as constituting a part of its assets, and that debts had been contracted with those, who relied upon such assets as the means of payment; or that its stock had been sold, and dividends declared upon it, on the faith, that such contract constituted a part of its funds. But a more conclusive answer is, that there must be a consideration at the time of making the contract. And that no injurious consequences to the parties or to others, which may afterward happen from their having made it, can constitute a legal consideration for it.

*A nonsuit is to be entered.*